# THE WILLIAM SMITH.[1]

## CLYDE STEAMSHIP CO. v. THE WILLIAM SMITH.

### (District Court, S. D. New York. December 8, 1893.)

SALVAGE—DERELICT—STRANDING DURING SALVAGE SERVICE ONE OF SALVOR'S RISKS.

> The sum of $8,336.23 represented the entire net proceeds of a schooner found derelict at sea, and brought safely into Southport, N. C., by libelant's large and valuable passenger steamship, and afterwards towed, by agreement, to New York for sale. After deducting the necessary expenses of the last-named towage, there was left $5,450.77 of the proceeds of sale in New York as the true net proceeds. Of this, 70 per cent., or $3,815.54, was allowed as salvage. During the salvage, stranding of the schooner occurred, which cost the steamer $1,000. *Held,* that this item was not taxable as an expense, being a salvor's risk, and, as such, to be taken into account incidentally only.

In Admiralty. Libel for salvage. Decree for libelant.

Mr. Ward and Mr. Hough, for libelant.

Wing, Shoudy & Putnam and Mr. Burlingham, for respondents.

BROWN, District Judge. The whole net proceeds of vessel, cargo and freight amount to $8,336.23. From this should be deducted, first, the expenses of bringing the schooner to New York from Southport, N. C., where the salvage service proper was completed. From there she was brought by the libelant, at the request and for the benefit of all parties in interest, and the result has been, doubtless, advantageous to all. This expense amounts, as I find, to $2,885.46, after excluding therefrom certain charges incidental to the salvage proper, and also the sum of $1,000, paid to a tug at Southport for getting the schooner off the bar, where she had grounded in the course of the salvage enterprise. This was an expense incident to the risk of the salvage operation, and was, therefore, at the risk of the salvors. This risk, however, is an element which is considered and allowed for in the percentage hereafter given to the salvors, and is covered by that allowance. Deducting the $2,885.46 from $8,336.23, leaves $5,450.77, as the true net proceeds.

The schooner was a derelict; she had drifted in the ocean about 120 miles before she was picked up by the libelant's steamer Seminole. She is a large passenger steamer, worth about $225,000, and had on board a cargo worth about $370,000, as well as passengers impatient for the completion of the voyage. She was detained about 15 hours by the salvage service. The personal services of most of the ship's company in this case were comparatively small, and without danger; the expense and risk were chiefly on the part of the ship, and her owners. The salvage award, therefore, should go mainly to the latter. Seventy per cent. will, I think, be a proper allowance for the salvage service, which, computed upon $5,450.77, makes $3,815.54. Of this latter sum, $200 should be reserved for

---

[1] Reported by E. G. Benedict, Esq., of the New York bar.

the master; $150 for the first officer, Chichester; $50 for the three seamen who were put aboard the schooner; $200 for the other officers and men on board the steamer, to be distributed in proportion to their wages; and the residue, $3,215.24, to the owners of the Seminole, besides the $2,885.46 expenses above mentioned.

A decree may be entered in accordance herewith.