PEACOCK et al. v. THREE MILLION FEET OF LUMBER et al.

(District Court, N. D. California. May 8, 1899.)

No. 11,636.

1. SALVAGE—NATURE OF SERVICE—RIGHTS OF CREW.

A steamer towed a raft of lumber, found adrift on the sea, to a port, where, on communicating with the owners of the vessel, the master was directed to let go of it, and proceed on his voyage. He left the raft in a comparatively safe place, in charge of third persons, who agreed to give him a part of whatever they might receive for it. They sold the raft, and the purchaser had it towed to San Francisco, where he resold it to the claimant. *Held*, that the crew of the steamer had a claim for salvage services which they were entitled to enforce against the lumber, their right not being affected by the action of the owners in abandoning the raft, nor by the agreement of the master for a share of its proceeds, though such agreement debarred the master from recovering.

2. SAME—AMOUNT—RECOVERY BY CREW.

The personal services of the crew having been comparatively small, and rendered without danger, an allowance of $120 was made them, the value of the lumber after its delivery in San Francisco being about $7,200.

This was a libel on behalf of the crew of a steamer to recover for salvage services.

D. T. Sullivan, for libelant.

Andros & Frank, for claimant.

DE HAVEN, District Judge. On September 30, 1898, the steamer Whitesboro, bound on a voyage from Mendocino to Port Harford, discovered, adrift upon the ocean, the raft of lumber mentioned in the libel, and made fast to and towed the same into the port of Santa Cruz. The lumber referred to had, some time before being thus picked up, broken off from a larger raft while being towed to the port of San Francisco. Upon arriving at Santa Cruz, the master of the Whitesboro communicated with the owners of the steamer, and received orders from them to let go of the raft, and proceed upon his voyage. The master thereupon gave possession of the raft to some fishermen under an agreement that he was to have a certain share of what might be received in the event of its being sold by them, or claimed by its owners. It was thereafter sold by the fishermen, for the sum of $500, to one Cowell, who caused the same to be towed to the port of San Francisco, and there delivered to the claimant, upon the payment by the latter of the sum of $2,500. The claimant has also paid to the owners of the Whitesboro the sum of $500 on account of the services rendered by that steamer in taking the raft into Santa Cruz. The raft, when delivered in San Francisco, was of the value of about $7,200. The port of Santa Cruz is so situated that it is only protected from northerly winds, and for that reason cannot be regarded as a secure place for a raft of lumber to remain at anchor for any great length of time, but on the day when the raft referred to was brought there the wind was from the northwest, the sea was smooth, and such a raft, properly anchored in that port, would not have been considered, nor was this one in fact, in any immediate

danger of loss; and there can be no doubt that what was done by the Whitesboro in bringing the raft into that port contributed, in some degree at least, to its ultimate recovery by the owners. In my opinion, the service thus rendered by the Whitesboro and her crew may properly be regarded as a salvage service. It may be that the owners of the steamer would not be entitled to recover as for a salvage service because of the direction given by them to the master to abandon the raft at Santa Cruz, but, the raft having been brought into a place of comparative safety as the result in part of the efforts of the crew, the right of the latter to recover their proportion of the value of such salvage service was not forfeited by this action of· the owners of the steamer, nor was the right of the members of the crew in any way affected by the agreement made between the master and the fishermen. They were not parties to that agreement, and, as it appears from the evidence, knew nothing of it. Under such circumstances they were not bound by it. The Sarah Jane, 2 W. Rob. Adm. 110; The Britain, 1 W. Rob. Adm. 40.

The only question that remains is that which relates to the amount of the judgment to be awarded in favor of the libelant. The service rendered by the Whitesboro and her crew in bringing the raft into Santa Cruz was not of so meritorious a nature as to justify a large award by way of compensation, and in determining how much should be awarded on account of that service to the libelant, who sues in behalf of himself and the master and other members of the crew, the language of Judge Brown in delivering the opinion of the court in the case of The William Smith, 59 Fed. 615, may well be adopted by me as entirely applicable to the claims of the libelant and those in whose behalf this action is brought: "The personal services of most of the ship's company in this case were comparatively small, and without danger. The expense and risk were chiefly on the part of the ship and her owners." The master is not, by reason of his agreement with the fishermen, entitled to recover anything in this action, and, in my judgment, an allowance of $120 will sufficiently compensate the libelant and the remaining persons in whose behalf this suit is brought. The said sum to be divided between them in proportion to the wages received by them. The libelant is also entitled to recover costs. Let such a decree be entered.